## SIMON v. TEMPLE LUMBER CO.
### (No. 6820.)

(Court of Civil Appeals of Texas. Galveston. June 3, 1915.)

1. PRINCIPAL AND AGENT ⬤⟲25—AGENCY BY ESTOPPEL—KNOWLEDGE OF PRINCIPAL—NECESSITY.

Where it was sought to hold defendant on a draft drawn by the manager of his store, on the ground that such manager had previously, before entering defendant's employ, issued two checks in defendant's name, defendant never having known of the issuance of such checks, and never having authorized them, there could be no agency by estoppel.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 42–45; Dec. Dig. ⬤⟲25.]

2. PRINCIPAL AND AGENT ⬤⟲25—AGENCY BY ESTOPPEL—RELIANCE UPON APPEARANCES—NECESSITY.

Where the manager of defendant's store drew a draft in defendant's name to pay the debt of a lumber company, in which he had been interested, to another such company, and the latter parted with nothing on receipt of the draft, but merely deposited it for collection, there could be no recovery against defendant on such draft on the ground of estoppel, since there was no reliance upon any appearance of authority that would result in the payee lumber company's damage were defendant allowed to deny the defendant's manager's authority.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 42–45; Dec. Dig. ⬤⟲25.]

3. PRINCIPAL AND AGENT ⬤⟲109—AUTHORITY OF AGENT—STORE MANAGER.

Where H., the manager of defendant's store, which had furnished supplies to a lumber company in which H. had once been interested, directed the store bookkeeper, who had formerly, when H. was in financial difficulties, purchased his interest in the lumber company, to draw a draft in the name of defendant, which was given to plaintiff in payment of the debt to it of the lumber company, the defendant having no interest in the lumber concern, and knowing nothing about it, the transaction was neither within the real or apparent authority of the store·manager.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 318–322, 360, 361, 365; Dec. Dig. ⬤⟲109.]

---

  ⬤⟲For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

4. PRINCIPAL AND AGENT ⬌123—AUTHORITY —ISSUANCE OF DRAFT—SUFFICIENCY OF EVIDENCE.·

In an action against defendant on a draft drawn by his store manager, evidence *held* insufficient to show that defendant authorized such draft.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 420–429; Dec. Dig. ⬌ 123.]

Appeal from District Court, Sabine County; John M. Conley, Special Judge.

Action by the Temple Lumber Company against Phil Simon. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Hamilton & Hamilton and J. W. Minton, all of Hemphill, for appellant. A. E. & S. M. Davis, of San Augustine, and W. F. Goodrich, of Hemphill, for appellee.

McMEANS, J. This is a second appeal of this case. The opinion of the court disposing of the first appeal is reported in 146 S. W. 592.

The Temple Lumber Company sued Phil Simon on a draft for $564.82, alleged to have been drawn by the defendant in favor of plaintiff on the Brookland State Bank. On presentation, payment was refused. A trial before the court without a jury resulted in a judgment for plaintiff for the amount sued for, and defendant has appealed.

At the time of the institution of the suit the plaintiff sued out a writ of attachment, which was levied upon the property of defendant, which was afterwards replevied by him, the sureties on his replevy bond being G. W. Nerrin, W. J. Baker, J. H. Letney, Jr., and D. T. Meigs, who were afterwards made party defendants to the suit, and against whom as such sureties a judgment was also rendered for the amount of plaintiff's demand. No appeal from the judgment has been prosecuted by them.

The defendant, Phil Simon, was a resident of the state of Louisiana. He appeared and filed an answer, in which he pleaded that the draft sued on was not executed by him or by any one authorized by him; and this plea was duly sworn to.

From the evidence in the record we make the following findings of fact: Prior to June, 1910, H. Simon and C. M. Cummings formed a partnership for the manufacture of hardwood lumber, under the firm name of Texas Hardwood Company. On May 21, 1910, they made a contract with the Garrison-Norton Lumber Company, by which they acquired the right to the hardwood timber on the land of said company, agreeing to pay $6 per thousand feet therefor. At the same time they made a contract with Frank Bell to log their sawmill, and agreed to pay him $6 per thousand feet for all logs placed upon their skidway. The Temple Lumber Company succeeded to all of the rights of the Garrison-Norton Lumber Company under said contract.

H. Simon was also engaged in the mercantile business. The Texas Hardwood Company lost money in its venture, and in June, 1910, H. Simon sold his interest in the Hardwood Company to M. B. (Maurice) Simon. Shortly after this H. Simon was adjudged a bankrupt, and his stock of merchandise was sold by the trustee in bankruptcy and bought in by the appellant, Phil Simon, who at once employed H. Simon as his agent and manager to conduct the mercantile business, and also employed M. B. Simon as bookkeeper. The business of the Hardwood Company was continued by M. B. Simon and Cummings. Phil Simon had no interest in the lumber concern, and knew nothing about it, but his store, conducted by H. Simon, furnished the Hardwood Company with goods on credit and when lumber was sold by the company the proceeds were paid to Phil Simon to cover the account.

The arrangement between the Hardwood Company and the Temple Lumber Company in regard to the payment for the timber, and with Bell for logging the mill, was this: Bell scaled the logs to ascertain the number of feet cut and put on the skidway, and kept a record of this in a book called the "scale book." At the end of each month Cummings would "O. K." the scale book, and Bell would take the book to H. Simon and collect the amounts due both himself and the Temple Lumber Company. On October 14, 1910, the amount due the Temple Lumber Company for timber cut during the previous month was $564.82, and a like sum was due Bell for logging. On that date Bell took to H. Simon the scale book, showing that these amounts were due, whereupon H. Simon directed M. B. Simon to issue a check on the Brookland State Bank in favor of Bell for the amount due him, which was done, and Bell presented the check to the bank, and it was cashed. H. Simon told Bell that he would mail a check to the Temple Lumber Company for the amount due it, and a draft was so mailed, and was received by the Lumber Company the next day. The draft is as follows:

"No. 68. Phil Simon, General Merchandise. Brookland, Texas, October 14, 1910. Pay to the order of the Temple Lumber Company, $564.82, five hundred and sixty-four and 82/100 dollars. To the Brookland State Bank, Brookland, Texas. [Signed] Phil Simon, per M. B. Simon."

The draft was made on a printed blank in which the name of Phil Simon was printed, with a blank after the word "per" for the name of the person issuing it as agent. Before the draft was presented to the bank for payment the sawmill of the Hardwood Company was destroyed by fire, and thereupon H. Simon stopped the payment of the draft. The evidence justifies the finding that the draft in question was issued by M. B. Simon on the authority of H. Simon, but there is no evidence in the record to justify a finding that H. Simon had authority to issue, or to

authorize the issuance, of drafts in the name of his principal, Phil Simon, to pay the debts of the Hardwood Company. The evidence relied upon by appellee to show H. Simon's authority in this regard is the following: After the suit was filed A. E. Davis, attorney for the Temple Lumber Company, went to De Ridder, La., to see Phil Simon about it, taking the draft. His testimony as to this is as follows:

"I pulled the draft from my pocket and handed it to Phil Simon, and the first question I asked him was, was this his draft, and he said it was, but that he had stopped payment of it. I will state further that at the time I presented this draft to Phil Simon for payment he examined the draft carefully before he said it was his draft."

Phil Simon admitted this conversation between himself and Davis, but explained that what he meant by saying that it was his draft was that his name was signed to it.

[1, 2] Another circumstance relied upon by appellee to establish the authority of H. Simon to issue the draft was the fact that during the time H. Simon was interested in the Hardwood Company he issued two checks in the name of Phil Simon, one for $47.15 to the Temple Lumber Company in payment for timber, and the other in a like amount to Bell for logging the mill. It was shown, however, that Phil Simon never knew of the issuance of these checks, and that he never authorized their issuance. There was no evidence to authorize the conclusion that there was any apparent authority in either H. Simon or M. B. Simon to draw the draft upon which appellee relied. Appellee parted with nothing upon receipt of the draft, but simply deposited it in the bank for collection, and, payment being refused, it brought this suit. Neither the pleadings nor the evidence raises the issue of estoppel.

[3] Under the facts stated the evidence falls short of proof that in issuing or causing to be issued the draft in question H. Simon was acting within the scope or apparent scope of his agency, and that Phil Simon was bound thereby. This being true, appellee was not entitled to a recovery against Phil Simon on the draft or for the amount thereof, and appellant's first assignment of error, complaining of the action of the court in rendering judgment against him, must be sustained.

[4] The court upon the request of the appellant reduced to writing and filed its findings of fact and conclusions of law. Among the other findings is this:

"I therefore find as a fact that the draft herein sued on was authorized by Phil Simon, and that the same is the draft of Phil Simon, and that the said Phil Simon became liable to pay the same."

This finding is attacked by appellant by an appropriate assignment of error. We have carefully read all the oral testimony contained in the statement of facts and find that there is no evidence in the record to justify this finding. The assignment is sustained.

It follows that the judgment of the court below should be reversed, and judgment be here rendered that appellee take nothing against appellant and the sureties on his replevy bond; and it has been so ordered.

Reversed and rendered.